IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| TRANSASIA LAWYERS,<br><br>              Plaintiff,<br>   v.<br><br>ECONOVA, INC.,<br><br>              Respondent. | **MEMORANDUM DECISION AND ORDER GRANTING PETITIONER'S [15] MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING RESPONDENT'S [21] MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 1:13-cv-98 DN<br><br>District Judge David Nuffer |

Petitioner TransAsia Lawyers ("TransAsia") moves for judgment on the pleadings[1] on all claims in its complaint.[2] Respondent EcoNova, Inc. ("EcoNova") opposes TransAsia's motion[3] and also moves for summary judgment,[4] which TransAsia opposes.[5] After careful consideration of the pleadings, the parties' memoranda, and the relevant legal authority, TransAsia's Motion for Judgment on the Pleadings is GRANTED and EcoNova's Motion for Summary Judgment is DENIED.

---

[1] Petitioner's Motion for Judgment on the Pleadings and Memorandum in Support ("Motion for Judgment on the Pleadings"), docket no. 15, filed October 4, 2013.

[2] Docket no. 2, filed July 9, 2013.

[3] Defendant's Memorandum in Opposition to Petitioner's Motion for Judgment on the Pleadings ("Respondent's Opposition"), docket no. 20, filed November 8, 2013.

[4] Respondent's Motion for Summary Judgment and Supporting Memorandum ("Motion for Summary Judgment"), docket no. 21, filed November 14, 2013.

[5] Petitioner's Opposition to Respondent's Motion for Summary Judgment ("Petitioner's Opposition"), docket no. 28, filed December 12, 2013.

BACKGROUND ........................................................................................................................ 2
STATEMENTS OF UNDISPUTED FACT .......................................................................... 4
JUDGMENT ON THE PLEADINGS STANDARD ............................................................. 7
DISCUSSION .......................................................................................................................... 7
    I.    The Terms of Engagement Document is an Agreement to Arbitrate. ............................... 8
        A.    The Terms of Engagement Is Part of an Exchange of Letters. .................................... 9
        B.    Under Contract Principles, the Terms of Engagement Document is an Agreement to Arbitrate. ............................................................................................................... 12
    II.    Subject Matter Jurisdiction is Present. ............................................................................. 14
    III.    The Terms of Reference Document Was Not an Agreement to Arbitrate. ....................... 15
ORDER ................................................................................................................................... 17

# BACKGROUND[6]

In late 2009, EcoNova, a U.S. corporation, retained TransAsia, a law firm in the People's Republic of China, to provide legal services on its behalf. At the outset of the parties' dealings, TransAsia sent EcoNova a nine-page document entitled "Terms of Engagement" that detailed the firm's billing practices and terms of service. This document included an arbitration clause under the bold and underlined heading "Governing Law and Dispute Resolution," which stated that any dispute between the parties would be settled by arbitration in Hong Kong. The document did not request a signature, but did include the following provision:

> If we do not hear from you within 5 business days of receipt of our Engagement Letter, but continue to receive instructions from you or your representatives on the matter in question, then your acceptance of the agreement set forth in the Engagement Letter (inclusive of these Terms) shall be deemed to have been given.[7]

---

[6] The factual summary of this case is drawn from the parties' pleadings and the facts to which they have stipulated.

[7] Terms of Engagement at 2, docket no. 2-4.

After receiving the Terms of Engagement, EcoNova paid TransAsia a retainer fee; requested and received services from TransAsia; and received and paid invoices for legal services. EcoNova did not question or dispute any of the provisions of the Terms of Engagement.

EcoNova refused to pay a portion of TransAsia's fees. TransAsia started arbitration proceedings in Hong Kong. EcoNova opposed arbitration and requested dismissal of the arbitration because there was no binding arbitration agreement between the parties. The arbitrator denied EcoNova's request.

Thereafter, both parties signed a document entitled "Terms of Reference," which laid out the issues to be determined in the arbitration and a summary of the parties' positions.[8] One of the issues to be determined by the arbitrator was whether there was a binding arbitration agreement between the parties. EcoNova argued in the Terms of Reference that there was no binding arbitration agreement and that the arbitrator had no jurisdiction to hear the dispute.[9]

The arbitrator concluded that EcoNova was bound by the Terms of Engagement through its conduct and awarded TransAsia its claimed fees.

TransAsia subsequently filed this case to enforce the arbitration award. EcoNova argues that since it never signed an arbitration agreement, there was no valid agreement to arbitrate. It further argues that (1) this court lacks subject matter jurisdiction, and (2) even if this court has jurisdiction, the award should not be enforced absent a valid agreement to arbitrate. TransAsia responds that there were two valid agreements to arbitrate – the Terms of Engagement and the Terms of Reference.

---

[8] Terms of Reference, docket no. 2-5.
[9] Id. at 7 (Section 5.2.3.1).

## STATEMENTS OF UNDISPUTED FACT

1. TransAsia Lawyers is a law firm in the People's Republic of China and is not a citizen of the United States.[10]

2. EcoNova is a U.S. corporation incorporated in the State of Utah.[11]

3. TransAsia sent, and EcoNova received, a document entitled "Terms of Engagement."[12]

4. TransAsia's Terms of Engagement state that "[t]hese Terms of Engagement (Terms) govern our standard billing practices, and address various matters relating to the provision of our services."[13]

5. The Terms of Engagement include the following arbitration clause in article 44:

> If an irreconcilable dispute arises in connection with the interpretation or implementation of these Terms, it shall be settled under the Rules of Arbitration of the International Chamber of Commerce by a sole arbitrator. The arbitration shall be held in Hong Kong and conducted in the English language, and will be final and binding on both parties.[14]

6. After receiving the Terms of Engagement, EcoNova paid "the retainer" or "advance fee" to TransAsia, requested services from TransAsia, and paid invoices from TransAsia.[15]

7. TransAsia provided "legal services" to EcoNova.[16]

8. EcoNova and TransAsia had a dispute over fees that TransAsia claimed were due and owing by EcoNova, and TransAsia commenced arbitration against EcoNova.[17]

---

[10] Respondent's Opposition at ¶ 1, docket no. 20, filed November 8, 2013.

[11] *Id.* at ¶ 2.

[12] *Id.* at ¶ 3.

[13] *Id.* at ¶ 4.

[14] *Id.* at ¶ 5.

[15] *Id.* at ¶ 6.

[16] *Id.* at ¶ 7.

9. EcoNova received notice of the arbitration and participated in the arbitration.[18]

10. In the arbitration, lawyers for both EcoNova and TransAsia signed "Terms of Reference."[19]

11. In the Terms of Reference, EcoNova and TransAsia accepted Dr. Nils R. Eliasson as the arbitrator (the "Arbitrator").[20]

12. EcoNova and TransAsia agreed in the Terms of Reference that the place of arbitration would be Hong Kong.[21]

13. EcoNova and TransAsia agreed to the procedural rules governing the arbitration.[22]

14. EcoNova agreed that "among all possible options, the Court of Arbitration may choose either Hong Kong law or the laws of P.R. China as the governing law for this dispute."[23]

15. EcoNova agreed to submit to the Arbitrator the question of whether it was bound by the arbitration agreement in the Terms of Engagement.[24]

16. The Arbitrator, Nils R. Eliasson, issued a final award dated April 11, 2013.[25]

17. In the award, the Arbitrator found that Hong Kong law applied to the arbitration agreement in the Terms of Engagement.[26]

---

[17] *Id.* at ¶ 8.
[18] *Id.* at ¶ 9.
[19] *Id.* at ¶ 10.
[20] *Id.* at ¶ 11.
[21] *Id.* at ¶ 12.
[22] *Id.* at ¶ 13.
[23] *Id.* at ¶ 15.
[24] *Id.* at ¶ 16.
[25] *Id.* at ¶ 17.
[26] *Id.* at ¶ 18.

18.     The Arbitrator explained in the award that under Hong Kong law, an arbitration agreement may be established either orally or by conduct, and that an arbitration agreement does not need to be signed to be valid.[27]

19.     The Arbitrator also found that EcoNova accepted the arbitration agreement written in the Terms of Engagement by its conduct. Paragraphs 99, 100, and 101 of the award state:

> Respondent does not dispute that it received the 18 December 2009 email, to which the TOE [Terms of Engagement] was attached. Moreover, on 6 January 2010, Respondent paid the advance fee deposit requested by Claimant in the 18 December 2009 email, and continued to instruct Claimant to assist Respondent in relation to the Joint Venture Project. As testified by Mr[.] Chang and Ms[.] Zhang, Claimant provided legal services to Respondent in relation to the Joint Venture Project from December 2009 to July 2010. Respondent further recognizes that there existed a client-attorney relationship between Respondent and Claimant and that Respondent received the legal services provided by Claimant. On 22 February 2010, Respondent also paid Claimant's first invoice.
>
> It should also be noted that there is no evidence on record in this case indicating that Respondent, at any time prior to commencement of this arbitration, raised any concern with respect to the TOE or any term therein. Respondent's contention that its representatives did not understand the TOE lacks credibility in light of the nature of the business ventures in which Respondent otherwise was engaged. Respondent has furthermore not offered any evidence in support of such contention.
>
> On the basis of the facts and circumstances set out above, and based on the evidence on record in this case, the Sole Arbitrator finds that Respondent by seeking the services of Claimant – after having first been informed of the terms governing Claimant's offer to provide such services – must be deemed to have accepted such terms. The Sole Arbitrator, therefore, concludes that Respondent through its conduct accepted to be bound by the TOE, including the arbitration clause in Article 44.[28]

---

[27] *Id.* at ¶ 19.

[28] *Id.* at ¶ 20.

20. In the award, the Arbitrator found EcoNova liable to TransAsia for a total amount of $117,967.30 and ordered EcoNova to pay this amount to TransAsia.[29]

21. EcoNova has not paid TransAsia any portion of the amount awarded to TransAsia.[30]

## JUDGMENT ON THE PLEADINGS STANDARD

A motion for judgment on the pleadings applies the same standard as a 12(b)(6) motion to dismiss.[31] "[T]he [c]ourt should accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in the favor of the same."[32] "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[33]

## DISCUSSION

Neither party contends that there are any issues of material fact to resolve. Rather, both parties claim in their respective motions that judgment should be granted in their favor as a matter of law. TransAsia argues that this court should enforce the arbitration award. Econova argues that absent a valid, signed agreement to arbitrate, this court lacks subject matter jurisdiction and cannot enforce the arbitration award.[34] The question of whether there was a valid arbitration agreement is therefore central. For the reasons discussed below, there is a valid and enforceable agreement to arbitrate.

---

[29] *Id.* at ¶ 21.

[30] *Id.* at ¶ 22.

[31] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n. 2 (10th Cir. 2002).

[32] *Mejia v. Univ. of Utah*, 2007 WL 391586, at *1 (D. Utah Feb. 1, 2007).

[33] *Henshaw v. Wayne Cnty.*, 2009 WL 3226503, at *2 (D. Utah Oct. 1, 2009) (quotations and citations omitted).

[34] Respondent's Opposition at 1–2, 10–16, docket no. 20.

The enforcement of foreign arbitration awards is governed under Article 2 of the Federal Arbitration Act ("FAA") pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 (the "Convention").[35] Article IV, § 1, of the Convention provides:

> To obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement shall, at the time of the application, supply:
>
> (a) The duly authenticated original award or a certified copy thereof;
>
> (b) The original agreement referred to in Article II or a duly certified copy thereof.

Article II of the Convention requires that an arbitration agreement must be "in writing," and specifies that such an agreement "shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties *or contained in an exchange of letters or telegrams*."[36]

EcoNova argues that TransAsia cannot satisfy the Convention because it has no agreement in writing either signed by the parties or contained in an exchange of letters. TransAsia responds that it has provided two valid agreements to arbitrate – the Terms of Engagement and the Terms of Reference.

**I.     The Terms of Engagement Document is an Agreement to Arbitrate.**

EcoNova claims that because it never signed the Terms of Engagement, the Terms of Engagement was not a valid agreement to arbitrate. But despite being unsigned, The Terms of Engagement is enforceable because (1) it was an "exchange of letters," and (2) contract principles validate the agreement.

---

[35] 9 U.S.C. § 201.

[36] Convention, Art. II, §§ 1–2 (emphasis added).

### A. The Terms of Engagement Is Part of an Exchange of Letters.

The requirement to show an agreement in writing created by an exchange of letters "erects an only minimal burden."[37] In considering whether such an agreement was reached, courts look for some degree of back-and-forth between the parties evidencing acceptance of an agreement.

Various factors may be considered, including: (i) whether the document exchanged by the parties is sufficiently clear as to draw the arbitration provision to the attention of the parties;[38] (ii) whether the document containing the arbitration clause was unilaterally supplied by one party after the parties had already formed an agreement;[39] (iii) whether the party was "mute" in response to receiving the document;[40] (iv) whether the party "manifested . . . its assent to be bound by the contract containing the arbitration clause;"[41] and (v) whether the parties specifically communicated about the document containing the clause.[42]

*Glencore Ltd. v. Degussa Engineered Carbons L.P.*, found an agreement to arbitrate by exchange of letters.[43] *Glencore* considered a motion to compel arbitration of a dispute over fuel shipments from Degussa to Glencore. The parties never signed an agreement, but a written sales

---

[37] *Czarina, L.L.C. ex rel. Halvanon Ins. Co. v. W.F. Poe Syndicate,* 254 F. Supp. 2d 1229, 1237 n.17 (M.D. Fla. 2002) *aff'd sub nom. Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004).

[38] *See, e.g., Bothell v. Hitachi Zosen Corp.*, 97 F. Supp. 2d 1048, 1053 (W.D. Wash. 2000) ("[W]here the words used to refer to a proposed arbitration agreement are so vague as to be meaningless and no further explanation is provided, either by attachment, discussion or otherwise, the totality of the documents exchanged between the parties does not constitute a valid 'arbitration agreement' under the Convention.").

[39] *See AGP Indus. SA v. JPS Elastromerics Corp.*, 511 F. Supp. 2d 212, 215 (D. Mass. 2007) (no "agreement in writing" where buyer's purchase orders said nothing about arbitration and reverse side of seller's invoice contained arbitration clause to which buyer did not respond).

[40] *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 437 (S.D.N.Y. 2012).

[41] *Id.*

[42] *Id.*

[43] *Id.* at 435–37.

contract was exchanged, as was a series of emails and communications. The court concluded that "the parties' written communications *comfortably* satisfy the standard set by the convention."[44]

The court listed four reasons why the standard was met. First, this was not a case where one party sought to unilaterally impose an arbitration term after an agreement was already in place.[45] The arbitration clause was unambiguously incorporated by reference in a written agreement that was supplied to the contesting party at the outset.[46] Second, the contesting party was not mute in response to receiving the agreement, but sent emails proposing changes and referring to provisions of the sales contract.[47] Third, the contesting party "manifested in various ways its assent to be bound" by the sales agreement.[48] And, fourth, the parties specifically communicated about the sales contract which contained the arbitration clause.[49]

*Standard Bent Glass Corp. v. Glassrobots Oy*[50] reached a similar conclusion. Glassrobots Oy sought to compel arbitration with Standard which claimed goods Standard purchased were defective.[51] As in *Glencore*, the parties never signed an agreement, but instead made their deal through a back-and-forth series of letters and documents. Glassrobots Oy sent Standard a sales agreement that incorporated an arbitration clause by reference.[52] Without any reference to the arbitration clause, Standard sent a letter requesting several changes to the sales agreement, and closing with the statement, "Please call me if the above is not agreeable. If it is we will start the

---

[44] *Id.* at 436 (emphasis added).

[45] *Id.* at 437.

[46] *Id.* at 415–16, 437.

[47] *Id.* at 437.

[48] *Id.*

[49] *Id.*

[50] 333 F.3d 440 (3d Cir. 2003).

[51] *Id.* at 442–43.

[52] *Id.* at 450.

10

wire today."[53] Two days later, Standard sent payment for the goods, which Glassrobots Oy later delivered.[54]

The court held that despite the arbitration clause merely being incorporated by reference, the exchange between the parties was nevertheless sufficient to satisfy the standard under the Convention.[55] In so holding, the court noted the "strong federal policy in favor of arbitration over litigation," which "applies with special force in the field of international commerce."[56]

In contrast to *Glencore* and *Standard Bent*, several courts have held that the Convention's standard for an agreement by exchange of letters was not met. *Bothell v. Hitachi Zosen Corp.* held that there was no agreement to arbitrate because of the absence of any "reference, explicit or implied, to arbitration or dispute resolution on the face of the[] documents."[57] *AGP Industries SA v. JPS Elastromerics Corp*. held that the "mere exchange of forms" between the parties was insufficient to meet the standard.[58] The buyer had sent the seller purchase orders that did not contain an arbitration clause, and the seller later sent invoices to the buyer that contained an arbitration clause on the back of the form.[59] The seller had therefore attempted to unilaterally impose the arbitration term on the other party after an agreement was already in place. And in *Czarina, L.L.C. ex rel. Halvanon Ins. Co. v. W.F. Poe Syndicate*, the standard was not met

---

[53] *Id.* at 442.

[54] *Id.*

[55] *Id.* at 450.

[56] *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985)) (internal quotations omitted).

[57] 97 F. Supp. 2d 1048, 1053 (W.D. Wash. 2000).

[58] 511 F. Supp. 2d 212, 215 (D. Mass. 2007).

[59] *Id.* at 213–14.

11

because the arbitration clause was contained in a "sample wording" which was never shown to have been signed or otherwise adopted.[60]

Transasia and EcoNova reached agreement through their "exchange of letters." EcoNova admits that it received the Terms of Engagement and does not argue that the document was not clear to draw the arbitration provision to EcoNova's attention. Indeed, the Terms of Engagement is only nine pages long, and the arbitration clause appears under the bold and underlined heading "Governing Law and Dispute Resolution."[61] The document was sent to EcoNova at the outset of the parties' commercial relationship and there is no evidence that the parties had already made an agreement.

Further, EcoNova was not mute after receiving the Terms of Engagement, but instead paid the retainer fee and continued to communicate with TransAsia by requesting legal services, which TransAsia provided. In these communications, EcoNova did not object to the arbitration provision or to any other provisions of the Terms of Engagement. By continuing to direct TransAsia in its legal representation, EcoNova manifested its assent to be bound by the contract containing the arbitration clause.

Although it appears that the parties never directly discussed or negotiated the Terms of Engagement, or the arbitration clause itself, on the whole, the back-and-forth communications between the parties are sufficient to constitute an "exchange of letters."

### B. Under Contract Principles, the Terms of Engagement Document is an Agreement to Arbitrate.

Second, even if the Terms of Engagement does not qualify as an exchange of letters, the agreement to arbitrate is enforceable under general contract principles. Although Article II,

---

[60] 254 F. Supp. 2d 1229, 1237 (M.D. Fla. 2002) *aff'd sub nom. Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004).

[61] Terms of Engagement at 8, docket no. 2-4.

paragraph 2 of the Convention states that the agreement should be signed or contained in an exchange of letters, courts have repeatedly held that non-signatories to an arbitration agreement "may nevertheless be bound according to ordinary principles of contract and agency."[62] For example, courts have held that a non-signatory may be bound where it receives a direct benefit from a contract containing an arbitration clause.[63] Additionally, the United Nations Commission on International Trade Law ("UNCITRAL") has recommended that "[A]rticle II, paragraph 2, of the [New York Convention] be applied recognizing that the circumstances described therein are not exhaustive."[64]

While EcoNova claims that an arbitration agreement must be signed,[65] it fails to cite any case law holding an arbitration agreement invalid merely for lack of signature. For example, in *Czarina*, on which EcoNova relies, the arbitration agreement was invalid not merely because it was unsigned, but because it was only a sample wording that was not shown to have been adopted by the contesting party.[66] Additionally, in *Lo v. Aetna Intern, Inc.*, also cited by EcoNova, the court considered not only whether the contract was signed, but also whether the parties were bound under contract principles.[67]

---

[62] *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (quotations omitted); *see also Dynamo v. Ovechkin*, 412 F. Supp. 2d 24, 27–28 (D.C. Cir. 2006) (holding that "when contract law principles demonstrate the existence of an arbitration agreement between the parties, courts will find that Article II is satisfied") (citing *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440 (3d Cir. 2003)).

[63] *See International Paper Co. v. Schwabedissen*, 206 F.3d 411, 416, 418 (4th Cir. 2000) (holding that "a party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause," and that a nonsignatory who receives a direct benefit from a contract containing an arbitration clause is estopped from refusing to comply with it).

[64] UNCITRAL, Recommendation Regarding the Interpretation of Article II, Paragraph 2, and Article VII, Paragraph 1, of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, U.N. Doc. A/6/17 (July 7, 2006).

[65] EcoNova Reply at 11–14.

[66] 254 F. Supp. 2d at 1237.

[67] 2000 WL 565465 at *4 (D. Conn. Mar. 29, 2000).

EcoNova's approach is too narrow. General contract principles can validate an unsigned agreement to arbitrate. For example, in *Deloitte v. Deloitte*, the Second Circuit held that a party who received an agreement containing an arbitration clause, made no objection to its terms, and proceeded to utilize the agreement to its benefit, had knowingly accepted the benefits of the agreement and was estopped from avoiding arbitration despite never having signed the agreement.[68]

As in *Deloitte*, here EcoNova admittedly received the document containing the arbitration clause, did not object to its terms, and continued to utilize the legal services of TransAsia. EcoNova is estopped from arguing that the arbitration clause was invalid for lack of signature.

Further, binding EcoNova to the Terms of Engagement is appropriate considering the provision on the first page of the document that provides:

> If we do not hear from you within 5 business days of receipt of our Engagement Letter, but continue to receive instructions from you or your representatives on the matter in question, then your acceptance of the agreement set forth in the Engagement Letter (inclusive of these Terms) shall be deemed to have been given.[69]

According to this provision, EcoNova's failure to contest the arbitration clause combined with its subsequent instructions to TransAsia to provide legal services rendered the agreement enforceable.

## II. Subject Matter Jurisdiction is Present.

EcoNova also contends that this court lacks subject matter jurisdiction under an Eleventh Circuit case, *Czarina, LLC v. W.F. Poe Syndicate*, which concluded that a valid arbitration agreement was necessary for subject matter jurisdiction.[70] However, other courts have disagreed

---

[68] *Deloitte v. Deloitte*, 9 F.3d 1060, 1064 (2d Cir. 1993).

[69] Terms of Engagement at 2, docket no. 2-4.

[70] 358 F.3d 1286, 1291–92 (11th Cir. 2004).

14

with *Czarina*. For example, in *Sarhawk Group v. Oracle Group*, the Second Circuit held that objections to the validity of arbitration agreements "are merits questions, not subject matter jurisdiction questions."[71]

The Tenth Circuit has yet to rule on this issue, and it need not be decided here because even if subject matter jurisdiction were dependent on the validity of the arbitration agreement, as established above, the Terms of Engagement constitutes a valid agreement.

### III.     The Terms of Reference Document Was Not an Agreement to Arbitrate.

The parties also dispute whether the Terms of Reference document constitutes an enforceable agreement to arbitrate under the Convention. TransAsia claims that the Terms of Reference was a signed agreement to arbitrate, whereas EcoNova contends that it was merely a summary of the parties' positions in the arbitration that reflected EcoNova's stance that arbitration was improper for lack of an agreement to arbitrate.

Courts have discussed whether a party waives its right to object to the arbitrator's jurisdiction by participating in the arbitration. In *Kaplan v. First Options of Chicago, Inc.*, the Third Circuit held that "where a party objects to arbitrability but nevertheless participates in the arbitration proceedings, waiver of the challenge to arbitral jurisdiction will not be inferred."[72] In that case, the party participated in the arbitration by filing a written memorandum objecting to jurisdiction, filing counterclaims, and taking part in a discovery conference.[73] In affirming that decision on appeal, the United States Supreme Court held that since the party had "forcefully

---

[71] 404 F.3d 657, 660 (2d Cir. 2005); *see also Bell v. Hood*, 327 U.S. 678, 681–82 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

[72] 19 F.3d 1503, 1510 (3d Cir.1994), *aff'd,* 514 U.S. 938 (1995); *see also China Minmetals Materials Imp. & Exp. Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003).

[73] *Id.*at 1508.

15

object[ed] to the arbitrators deciding their dispute," it had not clearly agreed to submit the issue of arbitrability to arbitration.[74]

Likewise, in *China Minmetals Materials Import and Export Co., Ltd.*, although a party participated in arbitration, even presenting an argument on the merits, the court held that it had not waived its objection to the arbitrator's jurisdiction because it had "consistently objected to [the arbitrator's] jurisdiction throughout the proceeding."[75]

Although EcoNova signed the Terms of Reference, the document recites EcoNova's claim that "[t]here is no binding arbitration agreement between the Parties and the Tribunal has no jurisdiction to hear this dispute."[76] Additionally, prior to signing the Terms of Reference, EcoNova submitted a request to dismiss TransAsia's arbitration claim because the parties did not have a binding arbitration agreement.[77]

Thus, like the objecting parties in *First Options* and *China Minmetals*, EcoNova objected forcefully to the jurisdiction of the arbitrator. It therefore did not waive its objection to the arbitrator's jurisdiction, and the Terms of Reference is not separately an enforceable agreement to arbitrate under the Convention. However, this is not relevant to the outcome of this motion because the Terms of Engagement do constitute a binding agreement to arbitrate.

---

[74] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995).

[75] 334 F.3d at 291–92.

[76] Terms of Reference at Section 5.2.3.1, docket no. 2-5.

[77] *Id.* at ¶ 21, docket no. 2-5.

16

## ORDER

IT IS HEREBY ORDERED that TransAsia's Motion for Judgment on the Pleadings[78] is GRANTED.

IT IS FURTHER ORDERED that EcoNova's Motion for Summary Judgment[79] is DENIED.

IT IS FURTHER ORDERED that TransAsia shall prepare and submit the form of a judgment recognizing and enforcing the Award dated April 11, 2013, against Respondent Econova, Inc. including judgment in favor of Petitioner against Respondent in the full $117,967.34 amount of the Award.

Dated May 20, 2014.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[78] Docket no. 15, filed October 4, 2013.

[79] Docket no. 21, filed November 14, 2013.